**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOUGLAS ARTHUR STRONG, : | **HON. RENÉE MARIE BUMB** |
| Petitioner, : | Civil Action No. 08-3821 (RMB) |
| v. : |  |
| PAUL SCHULTZ, et al., : | **OPINION** |
| Respondents. : |  |

**APPEARANCES:**

    RICHARD COUGHLIN, FEDERAL PUBLIC DEFENDER
    800-840 Cooper Street, Suite 350
    Camden, New Jersey  08102
    Attorney for Petitioner

    JOHN ANDREW RUYMAN, Assistant United States Attorney
    UNITED STATES ATTORNEY FOR NEW JERSEY
    402 East State Street, Room 430
    Trenton, New Jersey  08608
    Attorneys for Respondents

**BUMB**, District Judge

    Petitioner Douglas Strong filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the date set by the Bureau of Prisons ("BOP") for his pre-release custody placement in a residential re-entry center ("RRC"), also known as a community corrections center (hereinafter referred to as "CCC").  The BOP filed an Answer, accompanied by the declarations of Joseph Denby and Vanessa Herbin-Smith, together with several exhibits.  Petitioner Strong filed a pro se Reply and a Reply through appointed counsel.  For the reasons explained in this

Opinion, the Court will grant the Writ and remand the matter to the BOP for re-determination of Petitioner's placement date.

## I.   BACKGROUND

Strong is incarcerated at FCI Fairton in New Jersey, serving a 33-month term of imprisonment imposed on November 13, 2007, by the United States District Court for the Southern District of California, based on his guilty plea to one count of bringing in illegal aliens without presentation.  See United States v. Strong, Crim. No. 07-1989 (DMS) judgment (S.D. Cal. Nov. 13, 2007).  The Petition, as amended, challenges the BOP's decision dated October 2, 2008, which determined that Strong is entitled to six months pre-release custody placement in a CCC from June 11, 2009, until his release date of December 7, 2009.

Specifically, Petitioner contends that the BOP determined this date pursuant to a directive from the General Counsel of the BOP that is contrary to the mandate of the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (effective Apr. 9, 2008) (the "Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624.  The Second Chance Act increases the duration of pre-release placement in a CCC from six to 12 months and requires the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008).  Strong

seeks a CCC placement of 12 months because, given his health needs, 12 months will provide a greater likelihood of successful reintegration into the community than six months.

The facts are not in dispute. On December 20, 2007, Petitioner filed a Request for Administrative Remedy challenging his CCC placement date. On January 24, 2008, the Warden determined that Petitioner cannot be placed in a CCC prior to August 31, 2009. Petitioner appealed, arguing that he should receive the maximum CCC placement because he has been diagnosed with a terminal illness and must obtain medical and substance abuse treatment before obtaining employment. On February 22, 2008, the Regional Director determined that Petitioner will be evaluated for CCC placement no later than 11 to 13 months before his projected release date in accordance with applicable statutes, regulations, and case law, as it exists at that time.

Petitioner appealed to the Central Office. On May 19, 2008, Harrell Watts, National Inmate Appeals Administrator, responded, in relevant part, as follows:

> Records indicate your projected release date is December 7, 2009, via Good Conduct Time Release. As a result of the Second Chance Act of 2007, you will be reviewed for RRC placement by your unit team between 17 and 19 months of your projected release date. If you are not satisfied with the recommendation by staff when rendered, you may initiate a Request for Administrative Remedy at your local institution.

(Administrative Remedy Response No. 477229-A1, by Harrell Watts dated May 19, 2008) (Docket entry #13-4, p. 4.)

On July 7, 2008, the Warden signed Strong's first Institutional Referral for a CCC placement of 60 days. On or about July 16, 2008, Strong filed the § 2241 Petition presently before this Court. The Petition challenges the 60-day placement as contrary to 18 U.S.C. § 3621(b) and § 3624(c), as amended by the Second Chance Act on April 9, 2008. Petitioner asserts that he is entitled to be considered for a 12-month CCC placement under the Second Chance Act and, given his long history of drug addiction, his history of non-violent drug-related crimes, his HIV diagnosis, the removal of his spleen, his need for various medications, and his relapse potential, he has a greater likelihood of successful reintegration with a 12-month placement.

On October 15, 2008, Respondents filed the Answer, together with the declarations of Joseph Denby, Petitioner's case manager, and Vanessa Herbin-Smith, Supervisory Paralegal Specialist, and several documents. According to the Answer, on August 20, 2008, United States District Judge Dana M. Sabraw amended Petitioner's judgment of conviction to provide for two years of supervised release and to delete the supervised release condition requiring Petitioner to reside in a CCC for 120 days. According to Joseph Denby, Petitioner's Unit Team reconsidered Petitioner's CCC placement date in light of this development. On October 2, 2008,

Warden Schultz signed a second Institutional Referral for CCC Placement, which provides for a six-month placement (June 11, 2009, through December 7, 2009). The referral form states that Petitioner has a substance abuse history of alcohol, cocaine and heroin and sets forth the following specific pre-release needs:

> Inmate Strong is being referred for Residential Reentry Center placement for a period of 180 days, pursuant to the Second Chance Act. The Unit Team has determined the recommended placement is of sufficient duration to provide the greatest likelihood of successful reintegration into the community. He will be able to use this time to establish employment and enhance family ties. He has general job skills, life skills, and community resources. He has a letter of reasonable assurance from Exponents Drug Treatment. He has been excepted (sic) into the program. He has **three years** Supervised Release to follow. He is participating in the Inmate Financial Responsibility Program in order to pay his $100.00 Felony Assessment fee. He has been diagnosed [HIV positive]. He is currently taking medications daily for these health issues. Transitional Services will be requested because of his substance abuse history.

(Institutional Referral for CCC Placement dated Oct. 2, 2008) (Docket entry 13-3, p. 43.) (emphasis added)

Denby indicates that Petitioner's placement date of June 11, 2009, was determined pursuant to the Second Chance Act, as interpreted by a memorandum dated April 14, 2008, from the BOP's Office of General Counsel and Correctional Programs

Administrator.[1]  (Denby declaration, ¶ 5) (Docket entry #13-2, p. 3.)  The memorandum is attached to Denby's declaration. (Memorandum for Chief Executive Officers, dated April 14, 2008, entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007," from Joyce K. Conley, Assistant Director of Correctional Programs Division, and Kathleen M. Kenney, Assistant Director/General Counsel) (Docket entry #13-2, p. 19) (the "Memorandum").  The Memorandum provides in relevant part:

> **Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months.** While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(Id.)

Respondents argue in the Answer that this Court should dismiss the Petition because Petitioner did not appeal the October 2, 2008, Institutional Referral to the Regional Director

---

[1] Denby avers:  "This memorandum provided Bureau institutions with guidance to implement the Second Chance Act of 2007 while the regulations are proceeding.  Among other things, the memorandum advised institutions how to make an inmate's pre-release RRC placement decision in view of the Second Chance Act." (Docket entry #13-2, p. 3.)

6

and the General Counsel.  Respondents alternatively argue that the Petition should be dismissed on the merits.

Petitioner filed a pro se Reply on October 30, 2008. (Docket entry #15.)  Petitioner maintains that the April 14 Memorandum instructs prison officials not to comply with the Second Chance Act. (Docket entry #15, pp. 6-7.)  Petitioner argues that, under the Second Chance Act

> bureau staff must approach every individual inmates assesment (sic) with the understanding that he/she is now eligible for a maximum of 12 months pre-release placement . . . .  Strong contends that BOP officials must work from the assumption that Strong should receive 12 months th[e]n and only th[e]n justify any less based upon individual circumstances. . . .  As stated by the Woodall Court " The exercise of that discretion must be based at least in part, on 3621(b) factors. "

(Id., p. 17.)

Petitioner explains why, in his view, a CCC placement of six months is not of sufficient duration for him to successfully reintegrate.  First, he asserts that because his medical condition has deteriorated to the extent that he has been diagnosed with AIDS, he must obtain appropriate medical care before finding a job and becoming self-sustaining.  In addition, because he has a long history of substance abuse, he needs additional and lengthy substance abuse treatment.

By Order entered October 30, 2008, this Court appointed the Federal Public Defender to represent Petitioner, and extended the

time for counsel to file a reply.  Through counsel, Petitioner argues that the April 14 Memorandum contradicts Congress's directive that CCC placement time be of sufficient duration to provide the greatest likelihood of successful reintegration into the community.  Petitioner argues that, by determining Petitioner's placement in accordance with the criteria set forth in the Memorandum, Respondents deprived Strong of the statutory opportunity to be individually considered for CCC placement for a period of up to one year on the basis of the neutral criteria identified by Congress in 18 U.S.C. § 3621(b).  "Instead of striving to implement the intent of Congress 'to provide the greatest likelihood of successful reintegration into the community,' the BOP, in a bit of institutional arrogance, announced that, notwithstanding the will of Congress, the presumptive norm would continue to be a maximum of six months RRC placement."  (Docket entry #20, p. 6.)  Petitioner asks this Court to direct the BOP to reconsider Strong for a 12-month placement, to explain application of the statutory criteria, and to file a sworn declaration stating that the April 14, 2008, Memorandum played no role in the exercise of discretion.

## II.  DISCUSSION

A. <u>Jurisdiction</u>

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation

of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the legality of his CCC placement by the BOP under federal law, and he was incarcerated in New Jersey at the time he filed the Petition. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005); see also Spencer v. Kemna, 523 U.S. 1 (1998).

B. Exhaustion

Respondents argue that the Petition should be dismissed without prejudice because Petitioner has not exhausted the three-step Administrative Remedy Program. The BOP acknowledges that Strong pursued all three steps of the Administrative Remedy Program, with the final decision on May 19, 2008, by Harrell

9

Watts of the Central Office. Respondents contend, however, that the Petition should nevertheless be dismissed as unexhausted because Petitioner did not exhaust administrative remedies a second time by appealing the Warden's October 2, 2008, determination.

This Court notes that Strong is currently scheduled to be placed in a CCC for the final six months of his sentence (from June 11, 2009, through December 7, 2009). Given that it took five months to exhaust administrative remedies the first time around, dismissal of the Petition as unexhausted would effectively moot Petitioner's § 2241 claim through no fault of his own. See Woodall v. Federal Bureau of Prisons, 432 F. 3d 235, 239 n.2 (3d Cir. 2005). Moreover, the purposes of exhaustion would not be served by requiring a second round of exhaustion, since Strong is challenging the validity of the BOP's April 14, 2008, guidance, not its application. This Court will therefore excuse the failure to exhaust administrative remedies. Id.

C. The Merits

Petitioner complains that, by determining his CCC placement period pursuant to the Memorandum, Respondents acted contrary to 18 U.S.C. § 3624(c). In sum, Respondents failed to consider him for a placement period that would give him the greatest likelihood of successful reintegration, i.e., 12 months.

10

This Court will first examine the relevant statutory regime, as amended by the Second Chance Act on April 9, 2008. Prior to the Second Chance Act, Section 3624(c) provided:

> (c) **Pre-release custody**.-- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extend practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c)(2007), <u>amended by</u> 18 U.S.C. § 3624(c) (Apr. 9, 2008).

As amended by the Second Chance Act, Section 3624(c) now provides, in relevant part:

> (c) **Prerelease Custody**
>
> (1) **In General**. The Director of the BOP shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community . . . .
>
>                *             *             *
>
> (6) **Issuance of Regulations**. The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that

>     placement in a community correctional
>     facility by the BOP is
>
>>     (A) conducted in a manner consistent
>>     with section 3621(b) of this title;
>>
>>     (B) determined on an individual basis;
>>     and
>>
>>     (C) of sufficient duration to provide
>>     the greatest likelihood of successful
>>     reintegration into the community.

18 U.S.C. § 3624(c)(1) and (c)(6) (Apr. 9, 2008).[2]

The Second Chance Act modified Section 3624(c) by (1) doubling the pre-release placement period, (2) requiring the BOP to make CCC placement decisions on an individual basis, and (3)

---

[2] Section 3621(b) of Title 18 provides, in relevant part:

> (b) Place of imprisonment.-- The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . ., that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence [that articulated the purpose behind the sentence or offered a recommendation for placement] . . .
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 . . . .

18 U.S.C. § 3621(b) (April 9, 2009).

requiring the BOP to ensure that, consistent with the factors in Section 3621(b), the duration of the placement period gives the inmate the <u>greatest likelihood</u> of successful community reintegration. <u>See</u> 18 U.S.C. § 3624(c). Obviously, an underlying premise of these amendments is that the more time an inmate spends in a CCC before he or she is released from BOP custody, the more likely it is that his or her community reintegration will be successful.

Yet, five days after enactment of the Second Chance Act, the BOP issued the April 14, 2008, Memorandum which provides, in relevant part:

> **Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months.** While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(Memorandum dated April 14, 2008, p. 4) (docket entry #13-2, p. 19).

As explained above, the Second Chance Act limits the BOP's discretion in determining the placement duration by requiring that each placement is "of sufficient duration [not to exceed 12 months] to provide the greatest likelihood of successful

reintegration into the community." 18 U.S.C. § 3624(c)(6). By increasing the placement period to 12 months and requiring the BOP to ensure that placements are long enough to provide "the greatest likelihood of successful reintegration," Congress intended that each inmate would be considered for a placement of the longest duration - 12 months - although the ultimate placement may be less than 12 months, if warranted by application of the § 3621(b) factors, i.e., the nature and circumstances of the offense, the inmate's history and pertinent characteristics, and any statement by the sentencing court.

This Court notes that, a few weeks after Strong's placement was decided, on October 21, 2008, the BOP adopted regulations which do not contain the limiting criteria of the April 14, 2008, Memorandum. See 73 Fed. Reg. 62440-01 (Oct. 21, 2008). The new regulation entitled "Time-frames" authorizes BOP staff to designate inmates to a CCC for the final 12 months of the sentence. See 28 C.F.R. § 570.21(a) (Oct. 21, 2008) ("Inmates may be designated to community confinement as a condition of prerelease custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"). Unlike the April 14, 2008, Memorandum, the regulation entitled "Designation" does not limit the discretion of staff to designate inmates to a CCC for more than six months:

> Inmates will be considered for pre-release
> community confinement in a manner consistent

14

> with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

28 C.F.R. § 570.22 (Oct. 21, 2008).

This Court finds that, by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less and by denying staff the discretion to recommend a placement longer than six months (without advance written approval from the Regional Director), the April 14, 2008, Memorandum is inconsistent with the Second Chance Act's amendments to § 3624(c).[3] The April 14, 2008, Memorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood

---

[3] The April 14, 2008, Memorandum is not entitled to Chevron deference. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). The limitations in the Memorandum were not embodied in a regulation or even a Program Statement, and it is settled that BOP Program Statements are not entitled to Chevron deference. See Reno v. Koray, 515 U.S. 50, 61 (1995) (because they are merely internal agency guidelines that are not "subject to the rigors of the [APA], including public notice and comment," BOP Program Statements receive only "some deference"). Under this standard, "[t]he weight [accorded to an administrative] judgment . . . will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." U.S. v. Mead Corp., 533 U.S. 218, 228 (2001) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). Given that the limitations contained in the April 14, 2008, Memorandum find no support in the statutory text, this Court declines to defer to the criteria contained in the Memorandum.

15

of successful reintegration into the community, contrary to § 3624(c)(6)(C).  Accordingly, because the duration of Strong's CCC placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in determining that Strong's placement would be for six months.  This Court will therefore grant the writ to Strong, and remand the matter to the BOP with instructions to consider Strong for a longer placement in a CCC, in accordance with the Second Chance Act, and without regard to the April 14, 2008, Memorandum.  The BOP shall report the outcome to this Court.[4]

### III. CONCLUSION

For the reasons set forth above, the Court grants a Petition for a Writ of Habeas Corpus to Douglas Strong directing Respondents to immediately reconsider his designation for the remainder of his term of incarceration.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
United States District Judge

DATE: February 26, 2009

---

[4] Because Strong only has nine months left on his sentence, the BOP shall consider his designation to a CCC for the remainder of his term of incarceration.

16